IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED AUTOMOBILE, AEROSPACE, AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION, et al., <br><br> Plaintiffs <br><br> v. <br><br> LUIS A. FORTUÑO, et al., <br><br> Defendants | CIVIL NO. 09-1339 (JP) |

**OPINION AND ORDER**

Before the Court is a an amended motion requesting the entry of a preliminary injunction (**No. 6**) filed by Plaintiffs. Also before the Court is Defendants' opposition thereto (No. 29).[1] Plaintiffs have filed the instant lawsuit pursuant to Article I, Section 10 (the "Contract Clause") and Article III, Section 2 of the United States Constitution; the Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; to enjoin Defendants from implementing phases one through three of Public Law No. 7 of March 9, 2009 ("Law 7"). For the reasons stated herein, Plaintiffs' motion for a preliminary injunction is hereby **DENIED**.

---

1. The Court granted Plaintiff's request to file a reply brief, and ordered Plaintiff to file said brief on or before July 31, 2009 (No. 32). The deadline has now passed, and Plaintiff did not file a reply brief despite seeking leave of Court to do so.

CIVIL NO. 09-1339 (JP)            -2-

## I.   **INTRODUCTION AND BACKGROUND**

On February 25, 1998, the government of Puerto Rico enacted Public Law No. 45 ("Law 45"), P.R. Laws Ann. tit. 3, § 1451 *et seq.*, authorizing public employees to organize into unions for the purpose of collective bargaining as to their salaries and other conditions of their employment.  Law 45 requires employees to include in their collective bargaining agreements a provision to settle disputes through a grievance and arbitration procedure.  Law 45 also created the Public Service Labor Relations Commission (the "PSLRC") and gave the PSLRC exclusive jurisdiction to adjudicate all labor disputes arising under the collective bargaining agreements.  Section 5.1 of Law 45 created a statutory obligation for the government agencies to negotiate with the exclusive bargaining representative as to salaries and other conditions of employment for the public employees within the appropriate units.

Currently, more than fifty government agencies have in place collective bargaining agreements pursuant to Law 45.  Plaintiffs allege that said agreements are contractual obligations that include economic and non-economic clauses, covering over fifty thousand government employees.  Law 45 provides for a compulsory arbitration process in the case of an impasse in the negotiations between the exclusive bargaining representative and the government agency. Compulsory arbitration decisions involving economic issues are final and binding.

CIVIL NO. 09-1339 (JP)          -3-

On March 9, 2009, Defendants signed Law 7, known as the "Law Declaring a Fiscal State of Emergency and Establishing Comprehensive Fiscal Stabilization Plan to Save Puerto Rico Credit." Law 7 states, *inter alia*, that Puerto Rico is in a fiscal state of emergency, and that the purpose of the law is to deal with the economic crisis through a three phase plan. The first phase, which was implemented upon the signing of Law 7, asked certain public employees to accept a permanent reduction of one day of work during every two-week period, and also asked for public employees to voluntarily resign from their employment.

The second phase, to be implemented if the first phase failed to achieve its objectives, involves the termination of public employees. Plaintiffs allege that up to 40,000 public employees could be laid off from their employment during this phase.

The third phase of Law 7, which was also effective the same day said law was enacted, temporarily repeals the government agencies' obligation to extend or negotiate expired contracts or contracts which expire within the next two years. Plaintiffs allege that by enacting Law 7, the government of Puerto Rico temporarily suspended any contractual obligations under valid and enforceable collective bargaining agreements.

Plaintiffs in this case are a number of labor unions, both at the national and local level, as well as public employees who are members of said unions. Plaintiffs allege that on its face and as

CIVIL NO. 09-1339 (JP)           -4-

it is applied, Law 7 deprives Plaintiffs of their rights under the Constitution of the United States and the Constitution of the Commonwealth of Puerto Rico, and also their statutory and contractual rights under Law 45.  Specifically, Plaintiffs allege that it deprives public career employees of their property interest in their position as government employees.

## II.  **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct.  United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952).  The United States Court of Appeals for the First Circuit has set forth a quadripartite test for trial courts to use when considering whether to grant preliminary injunction requests.  Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction. Narragansett Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n.2 (1st Cir. 1987).

CIVIL NO. 09-1339 (JP)         -5-

Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others. Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988).

### III. ANALYSIS

Given the number of parties involved, and that the issues raised in Plaintiffs' motion are mainly issues of law that do not require the need for an evidentiary hearing, the Court will decide Plaintiffs' motion based on the parties' briefs, in lieu of holding a hearing on the same. Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement. Aoude v. Mobil Oil Corp., 862 F.2d at 893.

The Court will now consider Plaintiffs' motion for a preliminary injunction in light of the test set forth by the First Circuit, *supra*. Narragansett Indian Tribe, 934 F.2d at 5.

#### A.    Likelihood of Success on the Merits

Plaintiffs first argue that they are likely to succeed on the merits of this lawsuit because Law 7 violates the Contract Clause of the United States Constitution. The Contract Clause protects individual and other legal entities who have freely entered into contracts from retroactive litigation impairing the obligations under those contracts. See U.S. Const. Art. I, § 10; see also Redondo Constr. Corp. v. Izquierdo, 550 F. Supp. 2d 257, 265 (D.P.R. 2008).

CIVIL NO. 09-1339 (JP)        -6-

Specifically, it provides that "[n]o state shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts . . ." See U.S. Const. Art. I, § 10.

For a plaintiff to prevail on a Contract Clause claim, a two part test applies. The first inquiry is whether "a change in state law has resulted in the substantial impairment of a contractual relationship." Parella v. Retirement Bd. of the Rhode Island Employees' Retirement System, 173 F.3d 46, 59 (1st Cir. 1997) (internal quotation marks and citations omitted). This inquiry is broken down into three separate elements: (1) whether there is a contractual relationship, (2) whether a change in law impairs that contractual relationship, and (3) whether the impairment is substantial. Id. If these three elements are all answered affirmatively, the second inquiry is for the Court to determine "whether or not the impairment is nonetheless justified as reasonable and necessary to serve an important public purpose." Id. (quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977)).

The First Circuit has held that the Contract Clause is applicable to contracts entered into by the state, but typically "state statutory enactments do not of their own force create a contract with those whom the statute benefits." Hoffman v. Warwick, 909 F.2d 608, 614 (1st Cir. 1990). As to the second inquiry stated above, this Court has held that "when a state itself is a party to a contract, a court must scrutinize the state's asserted purpose with

CIVIL NO. 09-1339 (JP)           -7-

an extra measure of vigilance." Boneta v. Fernández, 950 F. Supp. 432, 433 (D.P.R. 1996) (quoting McGrath v. Rhode Island Retirement Board, 88 F.3d 12, 16 (1st Cir. 1996)). The First Circuit stated that:

> [A] state must do more than mouth the vocabulary of the public weal in order to reach safe harbor; a vaguely worded or pretextual objective, or one that reasonably may be attained without substantially impairing the contract rights of private parties, will not serve to avoid the full impact of the Contracts Clause.

McGrath, 88 F.3d at 16. However, the First Circuit held that "even a state law that creates a substantial impairment does not transgress the Contract Clause as long as it is appropriate for, and necessary to, the accomplishment of a legitimate public purpose." Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 191 (1st Cir. 1999) (citations omitted).

Plaintiffs allege that the enactment of Law 7 by Defendants substantially impairs Defendants' contractual obligations with no direct relationship with the declared purpose of dealing with the fiscal crisis. Specifically, Plaintiffs allege that Law 7 impairs the contractual obligation to negotiate non-economic clauses included in many or all of the collective bargaining agreements currently in place. Plaintiffs urge the Court to find that the suspension of non-economic clauses found in the collective bargaining agreements and the prohibition to negotiate the same are legislative actions that are not related to the legitimate public purpose justifying Law 7.

CIVIL NO. 09-1339 (JP)          -8-

The Court agrees with Defendants that Plaintiffs do not specify what these non-economic clauses consist of, nor do they provide an example of such a clause. Moreover, Plaintiffs' right to engage in collective bargaining stems from Law 45, which was created by the legislature. The First Circuit has held that a statutorily created right such as this can be suspended through subsequent legislation. See R.I. Bhd. of Corr. Officers v. Rhode Island, 357 F.3d 42, 47 (1st Cir. 2004) (stating that state legislation does not ordinarily create private contractual rights).

Recognizing that state legislation is generally subject to modification, the United States Supreme Court requires the legislature's intent to create private contractual rights to be unmistakably clear; even when contractual rights do exist, the legislature may abrogate them under certain circumstances. R.I. Bhd. of Corr. Officers, 357 F.3d at 46-47 (citations omitted); see also Parker v. Wakelin, 123 F.3d 1, 5 (1st Cir. 1997) (stating that "in order to deem a state legislative enactment a contract for the purposes of the Contract Clause, there must be a clear indication that the legislature intends to bind itself in a contractual manner"). Here, Plaintiffs have not provided the Court with any evidence or argumentation that the Puerto Rico legislature sought to permanently bind itself with regard to the contractual aspect of Law 45.

CIVIL NO. 09-1339 (JP)          -9-

Further, even if contractual impairment exists as a result of the enactment of Law 7, said law is nonetheless justified as reasonable and necessary to serve an important public purpose. Although the parties may disagree as to the solution, it is uncontested that Puerto Rico is in a financial crisis.  Defendants argue that Law 7 serves the legitimate public interest of stabilizing Puerto Rico's economy and restoring the credit rating of debt instruments issued by the government of Puerto Rico and its agencies. Defendants argue that Law 7 is reasonable because it establishes a balanced approach to diminish the budget deficit with both temporary and permanent revenue enhancing measures and cost reduction strategies.  Given the important justification of Law 7 in the midst of Puerto Rico's fiscal emergency, combined with Plaintiff's lack of specificity regarding their Contract Clause allegations, the Court finds, at this early juncture, that Plaintiffs are not so likely to succeed on the merits of their action that the entry of a preliminary injunction is justified.

Although Plaintiffs' motion for preliminary injunctive relief limits its likelihood of success on the merits argument to its Contract Clause claims, the Court will briefly also address Plaintiffs' due process claims, which were discussed in Defendants' opposition brief.  Plaintiffs allege due process requires a hearing to be held before the termination of any career employees. The First Circuit has recognized the existence of a limited "reorganization

CIVIL NO. 09-1339 (JP)              -10-

exception," which applies when a reorganization or cost-cutting measure results in the dismissal of employees. Duffy v. Sarault, 892 F.2d 139, 147 (1st Cir. 1989) (citing Misek v. City of Chicago, 783 F.2d 98, 100-01 (7th Cir. 1986). In such instances, when the reorganization is not merely pre-textual, then no hearing is due to terminated employees. Duffy, 892 at 147. "Because reorganizations often affect numerous employees, the governmental interest in efficient administration may weigh more heavily in such circumstances." Whalen v. Mass. Trial Court, 397 F.3d 19, 25 (1st Cir. 2005). In order to prevail on their due process claims in light of Defendants' reorganization argument, Plaintiffs will need to demonstrate that the reorganization was merely pre-text for the large scale layoffs. As such, Plaintiffs will face an uphill battle in order to prevail on their due process claims. As such, the Court cannot find at this juncture that Plaintiffs are likely to succeed on their due process claims.

### B.    Irreparable Harm to Plaintiffs

Plaintiffs must next show that they will suffer irreparable injury if the injunction is not granted. Narragansett Indian Tribe, 934 F.2d at 5. Plaintiffs allege that Law 7 will cause them irreparable harm by disrupting the Puerto Rican work force through the reduction of an estimated 40,000 employees, the assignment of new duties to remaining employees, and the cross-utilization of employees for different positions.

CIVIL NO. 09-1339 (JP)           -11-

Further, Plaintiffs allege that Law 7 deprives career employees of their due process right to a hearing before termination. Pursuant to Law 7, laid-off employees will be dismissed upon written notice, thirty days prior to the effective date of termination. Said employees can only appeal such a decision as it pertains to their seniority. Plaintiffs claim that the method utilized by Defendants' for determining the employees' seniority does not correctly calculate years of service. Moreover, Plaintiffs allege that Law 7 deprives discharged union career public employees of their contractual rights under the collective bargaining agreements, including the right to be represented by the exclusive bargaining representative.

Defendants argue that Plaintiffs have failed to show that they will suffer irreparable harm absent the requested injunction because none of the Plaintiffs are public employees who have been terminated or selected for termination. Additionally, Defendants argue that even if Plaintiffs were among the terminated employees, they would have an adequate remedy at law, including an entitlement to back pay and reinstatement.

The Court agrees with Defendants that Plaintiffs have not fully explained how the enactment of Law 7 has caused them irreparable harm, and even assuming *arguendo* that Plaintiffs are among the terminated employees or are unions whose employees are terminated, they have not explained how they would lack a remedy at law. That being said, large-scale layoffs certainly cause irreparable harm to

CIVIL NO. 09-1339 (JP)            -12-

the terminated employees and their families.  Moreover, even without more specific information, the Court also understands the potentially harmful and disruptive effect of the suspension of union contracts. The Court finds that Plaintiffs have met their burden of showing irreparable harm at this juncture, although as discussed below, the balance of the factors weighs against the entry of preliminary injunctive relief.

**C.   Comparable Harm to Defendants and Impact on the Public Interest**

The third element necessary for injunctive relief requires Plaintiffs to show that the injury inflicted upon Plaintiffs in the absence of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on the respondent.  Narragansett Indian Tribe, 934 F.2d at 5.  The fourth element requires the Court to consider the impact of the entry of preliminary injunctive relief on the public interest.  Id.  Because these criteria are related in the instant case, the Court will consider them together.

Plaintiffs allege that the government of Puerto Rico had less drastic alternatives to prevent the impact of the economic crisis, but chose not to comply with its own public policies and obligations, including Law No. 111 of May 31, 2006, known as "Law of Expenses Control in the Government Pay-Roll for the Fiscal Reform of the Government of Puerto Rico." Moreover, Plaintiffs argue, *inter alia*, that the termination of thousands of public employees will affect public service as a whole, thereby diminishing the essential services

CIVIL NO. 09-1339 (JP)          -13-

provided by the government that are available to the Puerto Rican citizenry.

In response, Defendants argue that a failure to take action now to reduce the budget deficit would thrust Puerto Rico into a depression of extreme proportions. Defendants argue that the structural deficit must be closed through a balance of cutback and revenue measures. An increase in taxes alone would impose burdens on consumers that would drive Puerto Rico into a further recession. On the other hand, merely cutting back on government spending to reduce the deficit would render the government inoperative and would seriously impact the services provided to the community. Therefore, Defendants enacted Law 7 as an emergency measure that imposes less of a burden on the public than the enactment of a plan that utilizes only increased revenue or cutbacks. Defendants argue that the benefits to the public interest of Law 7, and thus the benefits of denying Plaintiffs' motion for a preliminary injunction, far outweigh the harm to Plaintiffs.

The Court understands Plaintiffs' position and their insistence on a less invasive plan. However, the Court also realizes that Puerto Rico is deep into a financial recession and emergency measures are necessary. The unemployment rate in Puerto Rico in 2008 was eleven percent, according to the Puerto Rico Government Development Bank's statistics.[2] In the absence of drastic changes, a budget

---

2.  See www.bgfpr.com/economy.

CIVIL NO. 09-1339 (JP)          -14-

deficit of $3.2 billion is predicted for Puerto Rico in 2009.[3] Moreover, in 2007, Standard & Poor cut the Commonwealth of Puerto Rico's general-obligation bond rating from BBB to BBB-, the lowest investment grade, due to the Puerto Rico government's structural deficit.[4]  The entry of preliminary injunctive relief would unjustly and prematurely prevent the government of Puerto Rico from taking action to remedy the budget deficit.  Although Plaintiffs have demonstrated that they will likely suffer irreparable harm in the absence of preliminary injunctive relief, the Court finds that Defendants' arguments have prevailed as to the other three elements of the test.  Considering that a balance of the aforesaid factors weighs in Defendants' favor, the Court finds denial of preliminary injunctive relief to be appropriate.

## IV. CONCLUSION

In conclusion, Plaintiffs' motion for a preliminary injunction is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of August, 2009.

                                                s/Jaime Pieras, Jr.
                                                    JAIME PIERAS, JR.
                                            U.S. SENIOR DISTRICT JUDGE

---

3.    See Jerry Hart, Puerto Rico Takes Steps to Save Credit Rating, S&P Analyst Says, http://www.bloomberg.com.

4.    Id.